UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID ROHLFING, SR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:12-CV-01670-SPM |
| | ) | |
| CITY OF ST. CHARLES, MISSOURI, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the motion of Defendants City of St. Charles (the "City") and police officers Rachel Croce and Lisa Schweppe (the "Officers") to dismiss Plaintiff's claims brought pursuant to 42 U.S.C. § 1983. (Doc. 4). Plaintiff, David Rohlfing, Sr., claims he is entitled to recover under section 1983 because the Officers arrested, booked and detained him for Assault, Second Degree, without a warrant and without probable cause. Defendants contend that Counts I and II of the Complaint should be dismissed based upon the doctrine of qualified immunity. Defendants further contend that Plaintiff's claims against the City brought under theories of failure to train or supervise (Count II) and *respondeat superior* (Count III) fail to state a claim upon which relief can be granted. Because Plaintiff's Complaint does not, on its face, establish that the Officers are entitled to qualified immunity, the Court denies Defendants' motion as to Count I. However, for the reasons detailed below, the Court will grant Defendants' motion as to Counts II (failure to train) and III (*respondeat superior*) because they fail to state a claim for which relief can be granted.[1]

---

[1] The parties consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). (Doc. 13).

1

## I. FACTUAL BACKGROUND[2]

On June 29, 2011, Plaintiff and his wife went to a Hucks gas station in St. Charles to purchase fuel for Plaintiff's vehicle. As Plaintiff pulled his vehicle forward toward a gas pump, he saw that an individual, Travis A. Hume, was standing in the way. Plaintiff asked Hume to move, and Hume asserted that he was "saving" the spot for his girlfriend. Plaintiff and Hume exchanged words, and ultimately Hume relented and vacated his place on the lot. Plaintiff then moved forward, parked, purchased fuel, and left the Hucks premises without further incident.

Forty-five minutes after the incident and after Hume was told by his mother to contact the police, Hume summoned police and alleged that Plaintiff had struck Hume with Plaintiff's vehicle. Hume alleged that Plaintiff drove forward and hit him, forcing him onto the top of Plaintiff's vehicle, and that Plaintiff continued to drive forward with Hume still on his hood. Hume was not injured. This event was allegedly accompanied by loud statements between Plaintiff and Hume; however, no one called the police or otherwise intervened. One of the officers spoke to the on-duty manager to ascertain whether there were any tapes of the event; however, the officer did not ask any questions about whether the on-duty manager or anyone else employed by Hucks saw what happened. The officers did not attempt to locate or contact any other witnesses to the event who were customers of Hucks.

After leaving Hucks, Plaintiff and his wife drove to a nearby restaurant to meet out-of-town relatives. Plaintiff's wife left Plaintiff there, and she returned to their home. After Plaintiff's wife had been home for about fifteen minutes, she was summoned to the door by a knock. She opened the door and encountered three police officers: Defendants Rachel Croce and Lisa Schweppe, and, approximately twenty yards away, a man who appeared to be a supervisor.

---

[2] The Court's recitation of the facts is taken from the allegations in Plaintiff's Complaint (Doc. 1), which the Court accepts as true for purposes of this motion to dismiss.

The officers asked for David Rohlfing, and his wife told them that she had left him at a Culpepper's restaurant. The officers were aware that Plaintiff's wife was a potential witness to the incident between Plaintiff and Hume, but they did not interview her. They also had the opportunity to inspect the vehicle allegedly used to strike Hume, but they did not do so. The officers left.

After the officers left, at least two of them, Croce and Schweppe, went to Culpepper's, located Plaintiff, and arrested him. They handcuffed him in the middle of the restaurant, in front of his friends and family members and in public. They arrested him without any questioning of him. They conducted this arrest at the direction of, or with the knowledge and approval of, at least one supervisor. After taking Plaintiff into custody, the officers transported Plaintiff to the St. Charles police department, where he was booked, processed, and detained in jail until he was released pending application for a warrant. Plaintiff was booked for Assault, Second Degree, which is a class C felony in Missouri.

## II. DISCUSSION

### A. COUNT I: LIABILITY OF THE OFFICERS FOR ARREST WITHOUT PROBABLE CAUSE

In Count I, Plaintiff brings an action under 42 U.S.C. § 1983, alleging that the Officers deprived him of his rights under the Fourth and Fourteenth Amendments when they arrested him without a warrant and without probable cause. Specifically, he claims that they failed to conduct a reasonably thorough investigation in that they relied solely on the alleged victim's report, which was not credible; they did not interview potential witnesses or examine the car used in the alleged assault, despite having the opportunity to do so; and there were no exigent circumstances that would have excused the failure to conduct a more thorough investigation.

### 1. Applicable Legal Standard for Evaluating Defendants' Motion to Dismiss

Defendants contend that the Officers are entitled to qualified immunity and ask this Court to dismiss Count I for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). However, Defendants cite no cases in which courts have treated qualified immunity as a question of subject matter jurisdiction. Indeed, in the only case Defendants cite in which the court addressed a motion to dismiss based on qualified immunity, the court evaluated it as a 12(b)(6) motion for failure to state a claim. (Doc. 5, at 6 (citing *Ulrich v. Pope County*, No. 12-148 (DWF/LIB), 2012 WL 2603210, at *2-*3 (D. Minn. July 5, 2012))). Consistent with that case, this Court's independent review of the relevant case law demonstrates that courts within the Eighth Circuit do not treat qualified immunity as a subject matter jurisdiction issue, but rather as a Rule 12(b)(6) issue. *See, e.g.*, *Mathers v. Wright*, 636 F.3d 396, 397-401 (8th Cir. 2010); *Bradford v. Huckabee*, 394 F.3d 1012, 1015-16 (8th Cir. 2005); *Hafley v. Lohman*, 90 F.3d 264, 266-67 (8th Cir. 1996); *Bailey v. Calvin*, No. 4:11CV414 DDN, 2012 WL 4092456, at *1-*3 (E.D. Mo. Sept. 17, 2012); *Davis v. Webb*, No. 4:11-CV-1906-JAR, 2012 WL 3984514, at *1-*4 (E.D. Mo. Sept. 11, 2012); *Johnson v. Bd. of Police Comm'rs*, 370 F. Supp. 2d 892, 897-901 (E.D. Mo. 2005).

Thus, this Court rejects Defendants' suggestion that the qualified immunity issue implicates this Court's subject matter jurisdiction. This Court has jurisdiction over Plaintiff's claims because Plaintiff alleges a colorable claim arising under the Constitution and laws of the United States—a claim under 42 U.S.C. § 1983 that his Fourth and Fourteenth Amendment rights were violated when he was arrested without probable cause. *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."); *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 513, 126 S. Ct. 1235, 1244, 163 L.Ed.2d 1097 (2006) ("A plaintiff properly invokes § 1331 jurisdiction when

she pleads a colorable claim 'arising under' the Constitution or laws of the United States." (citing *Bell v. Hood*, 327 U.S. 678, 681-85, 66 S. Ct. 773, 90 L. Ed. 939 (1946))).

In the alternative, Defendants argue that Count I must be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief may be granted. (Doc. 11, at 4-5). When ruling on a Rule 12(b)(6) motion, the court must accept as true all of the factual allegations in the complaint, "no matter how skeptical the court may be." *Ashcroft v. Iqbal*, 556 U.S. 662, 696, 129 S. Ct. 1937, 1959, 173 L.Ed.2d 868 (2009). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord B & B Hardware, Inc. v. Hargis Indus., Inc.*, 569 F.3d 383, 387 (8th Cir. 2009). Stated differently, "a complaint must contain factual allegations sufficient 'to raise a right to relief above the speculative level . . . .'" *Parkhurst v. Tabor*, 569 F.3d 861, 865 (8th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555); *see also Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007) (examining federal pleading standards).

This standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Neither "labels and conclusions," a "formulaic recitation of the elements of a cause of action," nor "naked assertions devoid of further factual enhancement" will suffice. *Id.* A claim satisfies the plausibility standard "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. To prevail on a claim of qualified immunity at the motion to dismiss stage, the defendant "must show that [he or she] is entitled to qualified immunity on the face of the complaint." *Mathers*, 636 F.3d at 399.

### 2. Plaintiff's Complaint, Standing Alone, Does Not Establish That Defendants Are Entitled to Qualified Immunity.

Defendants argue that the "well-pled" facts in Plaintiff's Complaint establish that the Officers are entitled to qualified immunity. "Qualified immunity shields a government official from liability and the burdens of litigation unless his conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known." *Loch v. City of Litchfield*, 689 F.3d 961, 965 (8th Cir. 2012) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L.Ed.2d 396 (1982)). "An official is entitled to qualified immunity unless (1) the evidence, viewed in the light most favorable to the plaintiff, establishes a violation of a constitutional or statutory right, and (2) the right was clearly established at the time of the violation." *Id.* "To be clearly established, a right must be sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right." *Reichle v. Howards*, 132 S. Ct. 2088, 2093, 182 L.Ed.2d 985 (2012) (internal citations and quotations omitted).

"'It is well established that a warrantless arrest without probable cause violates an individual's constitutional rights under the Fourth and Fourteenth Amendments.'" *Marksmeier v. Davie*, 622 F.3d 896, 900 (8th Cir. 2010) (quoting *Hannah v. City of Overland, Mo.*, 795 F.2d 1385, 1389 (8th Cir. 1986)). On the other hand, "'[a] warrantless arrest is consistent with the Fourth Amendment if it is supported by probable cause.'" *Royster v. Nichols,* 698 F.3d 681, 687-88 (8th Cir. 2012) (quoting *Fisher v. Wal-Mart Stores, Inc.*, 619 F.3d 811, 816 (8th Cir. 2010)). "'An officer has probable cause to make a warrantless arrest when the facts and circumstances are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense.'" *Id.* Probable cause is determined at the moment the arrest was made; and, in determining whether probable cause existed, the court must look at all of the information available to the officers at the time of the arrest and decide whether, given the

totality of the circumstances, a prudent person would believe the suspect had committed or was committing a crime. *Id.* at 688.

Defendants in the present case assert that the facts in the Complaint establish the existence of probable cause, and thus, qualified immunity, because (1) the Officers' decision to arrest Plaintiff was predicated on the unsolicited report of Travis Hume, the alleged victim, (2) Hume's statement to police was sufficiently detailed, and (3) Plaintiff's Complaint acknowledges that exculpatory information that might have exonerated Plaintiff was not known to the Officers at the time of Plaintiff's arrest. In support of their position, Defendants argue that *Kiser v. City of Huron*, 219 F.3d 814, 815-16 (8th Cir. 2000), controls because the facts presented in Plaintiff's Complaint are analogous to the facts in *Kiser.* I disagree.

In *Kiser*, a woman went to a city police station and reported, "[a]mong many other details," her ex-boyfriend had confronted her in a local parking lot, taken her car keys, seized her by force, and driven her to a remote location against her will. *Id.* at 815. Based solely on the strength of the woman's representations in her interview, the officer arrested the suspect without a warrant. *Id.* The suspect filed suit alleging that the officer had violated his constitutional rights by arresting him without probable cause, arguing that the officer should have conducted additional investigation before arresting him. *Id.* at 815-16. The Court found that a reasonably prudent officer in the defendant's position "would have sufficient grounds to believe that [the plaintiff] had committed a serious criminal offense," and that therefore probable cause supported the warrantless arrest. *Id.* at 816. The court emphasized that the officer had "received a credible and unsolicited report from the alleged victim" and that that report "contained sufficient detail to suggest that the complainant spoke truthfully." *Id.* The court therefore affirmed the district court's grant of summary judgment. *Id.*

totality of the circumstances, a prudent person would believe the suspect had committed or was committing a crime. *Id.* at 688.

Defendants in the present case assert that the facts in the Complaint establish the existence of probable cause, and thus, qualified immunity, because (1) the Officers' decision to arrest Plaintiff was predicated on the unsolicited report of Travis Hume, the alleged victim, (2) Hume's statement to police was sufficiently detailed, and (3) Plaintiff's Complaint acknowledges that exculpatory information that might have exonerated Plaintiff was not known to the Officers at the time of Plaintiff's arrest. In support of their position, Defendants argue that *Kiser v. City of Huron*, 219 F.3d 814, 815-16 (8th Cir. 2000), controls because the facts presented in Plaintiff's Complaint are analogous to the facts in *Kiser.* I disagree.

In *Kiser*, a woman went to a city police station and reported, "[a]mong many other details," her ex-boyfriend had confronted her in a local parking lot, taken her car keys, seized her by force, and driven her to a remote location against her will. *Id.* at 815. Based solely on the strength of the woman's representations in her interview, the officer arrested the suspect without a warrant. *Id.* The suspect filed suit alleging that the officer had violated his constitutional rights by arresting him without probable cause, arguing that the officer should have conducted additional investigation before arresting him. *Id.* at 815-16. The Court found that a reasonably prudent officer in the defendant's position "would have sufficient grounds to believe that [the plaintiff] had committed a serious criminal offense," and that therefore probable cause supported the warrantless arrest. *Id.* at 816. The court emphasized that the officer had "received a credible and unsolicited report from the alleged victim" and that that report "contained sufficient detail to suggest that the complainant spoke truthfully." *Id.* The court therefore affirmed the district court's grant of summary judgment. *Id.*

totality of the circumstances, a prudent person would believe the suspect had committed or was committing a crime. *Id.* at 688.

Defendants in the present case assert that the facts in the Complaint establish the existence of probable cause, and thus, qualified immunity, because (1) the Officers' decision to arrest Plaintiff was predicated on the unsolicited report of Travis Hume, the alleged victim, (2) Hume's statement to police was sufficiently detailed, and (3) Plaintiff's Complaint acknowledges that exculpatory information that might have exonerated Plaintiff was not known to the Officers at the time of Plaintiff's arrest. In support of their position, Defendants argue that *Kiser v. City of Huron*, 219 F.3d 814, 815-16 (8th Cir. 2000), controls because the facts presented in Plaintiff's Complaint are analogous to the facts in *Kiser.* I disagree.

In *Kiser*, a woman went to a city police station and reported, "[a]mong many other details," her ex-boyfriend had confronted her in a local parking lot, taken her car keys, seized her by force, and driven her to a remote location against her will. *Id.* at 815. Based solely on the strength of the woman's representations in her interview, the officer arrested the suspect without a warrant. *Id.* The suspect filed suit alleging that the officer had violated his constitutional rights by arresting him without probable cause, arguing that the officer should have conducted additional investigation before arresting him. *Id.* at 815-16. The Court found that a reasonably prudent officer in the defendant's position "would have sufficient grounds to believe that [the plaintiff] had committed a serious criminal offense," and that therefore probable cause supported the warrantless arrest. *Id.* at 816. The court emphasized that the officer had "received a credible and unsolicited report from the alleged victim" and that that report "contained sufficient detail to suggest that the complainant spoke truthfully." *Id.* The court therefore affirmed the district court's grant of summary judgment. *Id.*

In this instance, *Kiser* does not control for several reasons. First, *Kiser* was decided at the summary judgment stage. As such, the court had the benefit of being able to evaluate the "many" details in the victim's statement to find that it contained "sufficient detail to suggest that the complainant spoke truthfully"—the primary factor on which the court relied in determining whether probable cause was present. *Id.* at 816. Here, Plaintiff's Complaint does not include a detailed recitation of Hume's statement to police. Instead, it asserts in general terms that Hume "summoned the police and alleged that Plaintiff had struck [Hume] with Plaintiff's vehicle." (Doc. 1, ¶ 18). The Complaint then goes on assert that Hume's account to police of what occurred "***included***" allegations that "when Plaintiff drove forward, he hit Hume, 'forcing Hume onto the top of [Plaintiff's] hood" and that "[Plaintiff] continued to drive forward with Hume still on his hood." *Id.* at ¶ 28. Thus, it is clear from the face of the Complaint that it does not reflect the totality of the circumstances known to the Officers at the time of Plaintiff's arrest. Although, as discussed in more detail below, the Complaint alleges sufficient facts to plausibly support a claim that the warrantless arrest violated Plaintiff's constitutional rights, given the paucity of facts detailing everything Hume told police, Defendants have not met their burden of establishing that they are entitled to qualified immunity based solely on the allegations in the Complaint.

Even assuming for the sake of argument that the Complaint comprises the totality of the circumstances known to the Officers at the time of the arrest, *Kiser* is not controlling. Looking solely at the facts alleged in the Complaint, Hume's account of the incident is unlike the victim's detailed account given to police in *Kiser*. The account Hume gave to the Officers in this case—namely, that Plaintiff struck him with Plaintiff's vehicle, forcing him onto the top of his hood, and continued to drive forward, and that this event was accompanied by loud statements between

Plaintiff and Hume—was not particularly detailed and, standing alone, does not warrant the conclusion that there was probable cause to believe Plaintiff had committed the felony offense of Assault, Second Degree.[3]

In addition, unlike the situation in *Kiser*, the Complaint here alleges that the Officers were aware of facts that significantly undermined the credibility of Hume's report. For example, the Officers were aware of, but did not consider, the fact that Hume was not injured, despite his allegation that he was allegedly hit by a car hard enough to force him onto the car's hood. They were also aware of, but did not consider, the fact that no one had called the police or otherwise intervened, despite the fact that the alleged incident happened in a public place and was accompanied by loud statements from Plaintiff and Hume.

The facts alleged in Plaintiff's Complaint also suggest that, unlike the officer in *Kiser*, the Officers here failed to conduct even a basic, minimal investigation despite having ample opportunities to do so and despite the absence of exigent circumstances. For example, the Officers here actually spoke with several potential eyewitnesses prior to the arrest—the on-duty manager at the gas station, Plaintiff's wife, and Plaintiff himself—yet failed to ask them any questions about what happened. Accepting as true Plaintiff's allegations regarding what actually

---

[3] Under Missouri law, a person commits the crime of assault in the second degree if he or she: (1) Attempts to kill or knowingly causes or attempts to cause serious physical injury to another person under the influence of sudden passion arising out of adequate cause; (2) Attempts to cause or knowingly causes physical injury to another person by means of a deadly weapon or dangerous instrument; (3) Recklessly causes serious physical injury to another person; (4) while in an intoxicated condition or under the influence of controlled substances or drugs, operates a motor vehicle and acts with criminal negligence to cause physical injury to any other person; (5) Recklessly causes physical injury to another person by means of discharge of a firearm; or (6) Operates a motor vehicle in violation of Mo. Rev. Stat. 304.022(2) and when so operating, acts with criminal negligence to cause physical injury to any person authorized to operate an emergency vehicle, while such person is in the performance of official duties. Mo. Rev. Stat. §565.060.1.

happened, it is a reasonable inference that one or more of these witnesses, if interviewed, would have offered exculpatory evidence. Plaintiff's allegation that there were no exigent circumstances that would have precluded a more thorough investigation is bolstered by the additional facts that Plaintiff was at a restaurant and his wife readily told the Officers about his whereabouts.

Defendants unsuccessfully attempt to sidestep the foregoing facts, which clearly distinguish this case from *Kiser*. First, Defendants argue that these distinguishing facts are mere conclusions which the Court need not consider in ruling on the motion to dismiss. However, the assertions in the Complaint which distinguish this case from *Kiser* are sufficiently detailed and go well beyond the sort of "labels and conclusions" and "naked assertions" that the Supreme Court has authorized courts to ignore when ruling on Rule 12(b)(6) motions. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Defendants next argue that Plaintiff's Complaint "expressly acknowledges" that these distinguishing facts were not known to the Officers at the time of Plaintiff's arrest. Notwithstanding Defendants' arguments to the contrary, Plaintiff's Complaint does not so assert. Rather, it states that Defendants "were required to consider the totality of the circumstances *presented to them*" and that they did not "consider" these circumstances before making their arrest. (Doc. 1, ¶ 28) (emphasis added). The Complaint sufficiently alleges that the Officers were aware of these circumstances.

The Eighth Circuit has previously held that an officer who performs an arrest based on a victim's report without conducting a reasonably thorough investigation—such as interviewing readily available witnesses at the scene who have exculpatory information—is not entitled to qualified immunity in a suit based on a lack of probable cause for the arrest. In *Kuehl v. Burtis*, 173 F.3d 646 (8th Cir. 1999), an officer arrested a suspect based on the report of a victim and

other eyewitnesses. The officer spoke only briefly with the suspect and ignored her account of what happened, declined to interview an eyewitness who had seen the entire incident and who attempted to explain what had happened, and ignored visible physical evidence supporting the suspect's story. *Id.* at 648-49. The suspect brought a section 1983 action alleging that she was arrested without probable cause, and the defendant moved for summary judgment on the basis of qualified immunity. *Id.* at 648. In affirming the district court's denial of summary judgment, the court held that "[a]n officer contemplating an arrest is not free to disregard plainly exculpatory evidence, even if substantial inculpatory evidence (standing by itself) suggests that probable cause exists. *Id.* at 650. It further held that "law enforcement officers have a duty to conduct a reasonably thorough investigation prior to arresting a suspect, at least in the absence of exigent circumstances and so long as 'law enforcement would not [be] unduly hampered . . . if the agents . . . wait[] to obtain more facts before seeking to arrest.'" *Id.* (quoting *United States v. Woolbright*, 831 F.2d 1390, 1394 (8th Cir. 1987)).

Other courts have given similar guidance. *See Amrine v. Brooks*, 522 F.3d 823, 832-33 (8th Cir. 2008) ("[I]n the absence of exigent circumstances an officer who unreasonably fails to investigate an incident sufficiently before arresting a suspect is not entitled to qualified immunity."); *Logsdon v. Hains*, 492 F.3d 334, 343-44 (6th Cir. 2007) (reversing the district court's dismissal based on qualified immunity and stating, "Officers initially assessing probable cause to arrest may not off-handedly disregard potentially exculpatory information made readily available by witnesses on the scene"); *Romero v. Fay*, 45 F.3d 1472, 1476-77 (10th Cir. 1995) ("[T]he cases state that the probable cause standard of the Fourth Amendment requires officers to reasonably interview witnesses readily available at the scene, investigate basic evidence, or otherwise inquire if a crime has been committed at all before invoking the power of warrantless

11

arrest and detention."), *quoted with approval in Kuehl*, 173 F.3d at 650; *Sevigny v. Dicksey*, 846 F.2d 953, 957 n.5 (4th Cir. 1988) ("[Objective inquiry into the reasonableness of an officer's perception of the critical facts leading to an arrest . . . must charge him with possession of all the information reasonably discoverable by an officer acting reasonably under the circumstances."), *cited with approval in Kuehl*, 173 F.3d at 650; *BeVier v. Hucal*, 806 F.2d 123, 128 (7th Cir. 1986) ("A police officer may not close her or his eyes to facts that would help clarify the circumstances of an arrest. Reasonable avenues of investigation must be pursued especially when, as here, it is unclear whether a crime had even taken place."), *cited with approval in Kuehl*, 173 F.3d at 650.

*Kuehl* and the cases it cites clearly establish that an officer may not conduct a warrantless arrest based solely on a victim's report without conducting at least some minimal investigation, at least where, as Plaintiff alleges here, the victim's report shows signs that it was not credible, there are obvious witnesses readily available to the officers who could contradict (or corroborate) the victim's report, and questioning those witnesses would not unduly hamper law enforcement. Taking Plaintiff's allegations as true (and with no other facts available), a reasonable police officer would have understood that arresting Plaintiff based on Hume's statements without any additional investigation, would violate Plaintiff's rights. Thus, although Defendants are certainly entitled to seek summary judgment should discovery reveal additional evidence in support of their position, dismissal is not warranted at this stage of the litigation because the Officers have not shown that they are entitled to qualified immunity based on the face of Plaintiff's Complaint.

### B. COUNT II: LIABILITY OF CITY OF ST. CHARLES FOR FAILURE TO TRAIN AND SUPERVISE

In Count II, Plaintiff alleges that the City deprived him of his rights under the Fourth and Fourteenth Amendments, because the Officers "were not properly trained in the law of arrest and

12

because they were not properly supervised in the event giving rise to this cause of action." (Doc. 1, ¶ 36).

Defendants move to dismiss this claim, first arguing that because the Officer Defendants did not violate Plaintiff's constitutional rights (as Defendants asserted in their motion to dismiss Count I), Count II must be dismissed. Defendants are correct that "in order for municipal liability to attach, individual liability first must be found on an underlying substantive claim." *Brockinton v. City of Sherwood, Ark.*, 503 F.3d 667, 674 (8th Cir. 2007) (quotation marks omitted); *see also Kiser v. City of Huron*, 219 F.3d 814, 816 (8th Cir. 2000) ("We have previously held that when a § 1983 plaintiff seeks to hold a municipality liable based on its alleged inadequate training and supervision of its police officers that plaintiff must first establish that the officers' actions were unlawful. . . . Here, because [the defendant officer] is entitled to qualified immunity and attendant summary judgment, [plaintiff] cannot establish the requisite underlying claim."). However, because the Court found that Plaintiff adequately alleged a violation of his constitutional rights in Count I, this principle is not a basis for dismissal of Count II at the present time.

Defendants also argue, in the alternative, that Count II must be dismissed for failure to state a claim because Plaintiff has failed to allege each element required to prevail upon his claim. To state a claim against the City for failure to train, a Plaintiff must allege that "(1) the city's . . . training practices are inadequate; (2) the city was deliberately indifferent to the rights of others in adopting them, such that the 'failure to train reflects a deliberate or conscious choice by a municipality'; and (3) an alleged deficiency in the city's . . . training procedures actually caused the plaintiff's injury." *Andrews v. Fowler*, 98 F.3d 1069, 1076 (8th Cir. 1996) (quoting *City of Canton v. Harris*, 489 U.S. 378, 389, 109 S. Ct. 1197, 1205, 103 L.Ed.2d 412 (1989));

13

*Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1216 (8th Cir. 2013) ("Under § 1983, 'a claim for failure to supervise requires the same analysis as a claim for failure to train.'" (quoting *Robinette v. Jones*, 476 F.3d 585, 591 (8th Cir. 2007))). To show deliberate indifference, a plaintiff "must prove that 'the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [City] can reasonably be said to have been deliberately indifferent to the need.'" *B.A.B., Jr. v. Bd. of Educ. of City of St. Louis*, 698 F.3d 1037, 1040 (8th Cir. 2012) (quoting *City of Canton*, 489 U.S. at 389). The Court agrees with Defendants that Plaintiff has failed to allege these elements.

First, Plaintiff has not adequately alleged that the City's training or supervision practices were inadequate. Plaintiff's Complaint alleges that the Officers were not properly trained or supervised but makes no allegations regarding the City's general training practices. The Supreme Court has emphasized that "the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform. That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *City of Canton*, 489 U.S. at 390-91. Thus, Plaintiff's allegation that the Officers in this case were not properly trained or supervised is insufficient.

Second, Plaintiff's Complaint is devoid of any allegations suggesting that the City acted with deliberate indifference to the rights of others in adopting its training procedures or that its alleged failure to train or supervise was a deliberate or conscious choice. Plaintiff argues that it is a "reasonable inference" from his allegation that the City's Chief of Police was made aware of Plaintiff's arrest and had the opportunity to intervene to prevent Plaintiff from being booked that

the City's training, supervision, and discipline were inadequate and that the City acted with deliberate indifference. The Court disagrees; the Chief of Police's failure to prevent Plaintiff from being booked on an assault charge after his arrest in this particular situation does not in any way imply that the City acted with deliberate indifference in adopting its training or supervision procedures. Thus, Plaintiff has failed to state a claim upon which relief may be granted, and Count II will be dismissed, without prejudice.

## C. COUNT III: *RESPONDEAT SUPERIOR* LIABILITY OF CITY OF ST. CHARLES

In Count III, Plaintiff asserts a claim against the City based on a theory of *respondeat superior*. Defendants move to dismiss the claim, asserting that federal courts have consistently refused to hold municipalities liable under a theory of *respondeat superior* in § 1983 actions.

It is well-established that a municipality cannot be held liable under § 1983 based on a *respondeat superior* theory. *See Connick v. Thompson*, 131 S. Ct. 1360, 1359, 179 L.Ed.2d 417 (2011) ("[U]nder § 1983, local governments are responsible only for their own illegal acts. They are not vicariously liable under § 1983 for their employees' actions.") (citations and quotation marks omitted); *Bd. of County Comm'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397, 403 (1997) ("We have consistently refused to hold municipalities liable under a theory of *respondeat superior*."); *City of Canton v. Harris*, 489 U.S. 378, 384, 109 S. Ct. 1197, 1203, 103 L.Ed. 2d 412 (1989) ("*Respondeat superior* or vicarious liability will not attach under § 1983."); *Loch v. City of Litchfield*, 689 F.3d 961, 967 (8th Cir. 2012) ("It is well-established, however, that a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."); *Dahl v. Rice County, Minn.*, 621 F.3d 740, 743 (8th Cir. 2010) ("Under 42 U.S.C. § 1983, a governmental entity may not be held liable for the unconstitutional acts of employees.").

Although acknowledging this precedent, Plaintiff states that Count III is "based on a good

faith argument for an extension of existing law." Plaintiff cites dissenting opinions in *Brown* and in *Oklahoma City v. Tuttle*, 471 U.S. 808, 105 S. Ct. 2427, 85 L.Ed.2d 791 (1985), in which various justices have argued that courts should recognize *respondeat superior* liability against municipalities. (Doc. 10, at 11-12).

This Court is obligated to follow existing law as established by the majority of the United States Supreme Court and the Eighth Circuit, which is plainly that municipalities cannot be held liable in section *respondeat superior* (Count III) and 1983 actions based on *respondeat superior*. Based on clearly established law, Count III must be dismissed for failure to state a claim.

### III. CONCLUSION

For all of the foregoing reasons, Defendants' motion to dismiss Count I based on qualified immunity should be denied. However, Counts II and III fail to state claims upon which relief may be granted; as such, Defendants' motion should be granted with respect to those counts.

Accordingly,

**IT IS HEREBY ORDERED THAT** Defendants' Motion to Dismiss Count I based on qualified immunity is **DENIED**.

**IT IS FURTHER ORDERED THAT** Defendants' Motion to Dismiss Count II is **GRANTED**. Count II is **DISMISSED**, without prejudice. Plaintiff may file an amended complaint if he wishes to do so.

**IT IS FURTHER ORDERED THAT** Defendants' Motion to Dismiss Count III is **GRANTED**. Count III is **DISMISSED**, with prejudice.

/s/Shirley Padmore Mensah
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 26th day of April, 2013.